STATE of Wisconsin, Plaintiff-Respondent,

v.

James Earl JACKSON, Defendant-Appellant.†

Court of Appeals

*No. 93–2126–CR. Submitted on briefs June 7, 1994.—Decided September 13, 1994.*

(Also reported in 523 N.W.2d 126.)

†Petition to review denied.

432

For the defendant-appellant the cause was submitted on the briefs of *Jeffrey W. Jensen* of the *Law Offices of Jeffrey W. Jensen* of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle*, attorney general by *Paul Lundsten*, assistant attorney general of *Wisconsin Department of Justice*.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

WEDEMEYER, P.J. James Earl Jackson appeals from a judgment of conviction, following a jury trial, finding him guilty of first degree reckless homicide, contrary to § 940.02(1), STATS. Jackson appeals his conviction alleging that trial court bias violated his due

process right to a fair trial. Jackson raises four instances that he asserts prove trial court bias and, therefore, a violation of his due process right to a fair trial. These are: (1) the trial court's ruling on hearsay objections; (2) the trial court's admission of certain testimony from Jackson's cross-examination; (3) the trial court's allowance of the State's comments regarding post-*Miranda* silence; and (4) the trial court's denial of a presentence investigation report. Because we find no evidence of trial court bias, and because we resolve each issue in favor of sustaining the judgment of conviction, we affirm.

## I. BACKGROUND

This case arises out of the death of Jackson's wife, Diane Jackson, who died when the car she was driving crashed into a tree. The crash was precipitated by a high-speed chase involving Diane and Jackson. Prior to leaving work on the date of the crash, Diane saw Jackson near her car in her employer's parking lot. After seeing this, Diane re-entered her place of employment and called a friend and co-worker, Cheryl Cross, who was located in another part of the building. Diane told Cross that she was afraid of Jackson and related several incidents of recent marital difficulties. After this conversation, Diane left work and was driving eastbound on Hampton Avenue in the City of Milwaukee. Jackson was also driving the same direction in his car. Both cars were traveling at a high rate of speed. Testimony at trial alleged that Jackson was chasing his wife and that Diane was trying to get away from him.

As a result of the chase and crash, Jackson was charged with first-degree reckless homicide for the death of his wife. The jury convicted him of the charge. The trial court denied Jackson's request for a

presentence report and sentenced Jackson to the maximum possible sentence, twenty years.

## II. DISCUSSION

A litigant has a due process right to a fair and impartial judge. *Murray v. Murray*, 128 Wis. 2d 458, 462, 383 N.W.2d 904, 906 (Ct. App. 1986). A litigant is denied due process only if the judge in fact treats him or her unfairly; the mere appearance of judicial partiality is not sufficient to find that a litigant has been deprived of his or her rights. *Margoles v. Johns*, 660 F.2d 291, 296 (7th Cir. 1981), *cert. denied*, 455 U.S. 909 (1982). Whether a judge lacks impartiality is a question of law which this court reviews *de novo*.[1] *Murray* at 463, 383 N.W.2d at 907.

Jackson first asserts that trial court bias was evident in the court's rulings regarding hearsay evidence elicited by the State from Cheryl Cross. Cross was allowed to testify regarding a conversation she had with Diane a short time before Diane had left work. Cross testified that Diane said she was afraid, that she was not going home, that she and Jackson had been fighting, that Jackson had beaten her once before, and that she feared he would hurt her again. Jackson claims that admission of these statements was error

---

[1] We emphasize for purposes of clarity that the dispositive issue is whether the trial court was biased, which as noted is subject to *de novo* review. If Jackson had raised the evidentiary issues independent of the bias question, the standard of review would be whether the trial court erroneously exercised its discretion.

435

pursuant to hearsay rules and reflected trial court bias.[2]

We do not find Jackson's hearsay argument persuasive. Although we agree that Cross' testimony was in fact hearsay, it clearly falls into the category of state of mind evidence, admissible as an exception to the hearsay rule, pursuant to § 908.03(3), STATS. Therefore, allowing this evidence was not demonstrative of trial court partiality.

We disagree with Jackson's contention that this evidence was irrelevant. The evidence was relevant pursuant to §§ 904.01 and 904.02, STATS., to show Diane's state of mind. Diane's state of mind was a key issue in the State's case. It was the State's theory that the fatal crash was caused when Jackson chased Diane causing her to speed away from him because she feared him. If Diane had not been afraid of Jackson and if he had not been chasing her, she would not have been speeding and there would not have been a fatal crash. Consequently, evidence regarding Diane's state of mind shortly before her death is relevant to the fact that Diane appeared to be fleeing from Jackson.

We also disagree with Jackson's contention that admitting this evidence violated his confrontation rights. As the Supreme Court recently explained, a

---

[2] Jackson also points to a statement made by the trial court in ruling on the hearsay objections to the effect that "the declarant is dead, we might argue because of the action of the defendant." We find that when taken in context, there was nothing about this comment by the trial court that evinced bias. This comment was made outside the presence of the jury and was peripheral to the trial court's reasoning in admitting the hearsay.

statement passes constitutional muster without a showing of particularized guarantees of the statement's trustworthiness as long as the hearsay exception is "firmly rooted." *White v. Illinois*, 112 S. Ct. 736, 742 n.8 (1992). It is only where the exception is not "firmly rooted" that one must examine the particularized guarantees of the statement's trustworthiness. *Idaho v. Wright*, 497 U.S. 805, 816-17 (1990). The state of mind exception is "firmly rooted." *Terrovona v. Kincheloe*, 852 F.2d 424, 427 (9th Cir. 1988), *cert. denied*, 111 S. Ct. 1631 (1991). We adopt this rationale and therefore need not address the particularized guarantees of Cross' statements. The statements fell into a firmly rooted hearsay exception, thereby satisfying Jackson's confrontation right.

Next, Jackson alleges that the trial court demonstrated bias by permitting the State to cross-examine him by asking him to explain inconsistencies between his testimony and that of other State witnesses. Specifically, Jackson argues it was improper to restate prior witnesses' testimony and to ask him if the prior witnesses were lying. Although we agree that, at first glance, this type of cross examination may appear to violate a rule recognized in *State v. Haseltine*, 120 Wis. 2d 92, 96, 352 N.W.2d 673, 676 (Ct. App. 1984) (no witness may give an opinion regarding whether another competent witness is telling the truth), a closer examination of the purpose and effect of the testimony reveals that these questions were solely to impeach Jackson's credibility. In asking these questions, the prosecution was highlighting the inconsistencies between Jackson's testimony and the testimony of other witnesses in an effort to impeach Jackson and to see if he had any explanation for the differences in the

testimony. Allowing the questioning, given its intended purpose and effect, was not violative of *Haseltine*. *See State v. Smith*, 170 Wis. 2d 701, 718, 490 N.W.2d 40, 48 (Ct. App. 1992) (if neither purpose nor effect was to attest to another witness's truthfulness, *Haseltine* is not violated), *cert. denied*, 113 S. Ct. 1860 (1993).

Jackson also argues that the trial court evinced bias in allowing testimony regarding alleged "post-*Miranda* silence." Jackson claims the trial court erred in allowing the prosecution to ask a police detective who testified during the State's rebuttal case, whether Jackson had told the police during questioning about a minor car accident which allegedly occurred at a gas station involving his car and his wife's car minutes prior to the fatal crash. Jackson offered the testimony regarding the "gas station accident" to explain that the damage to his car was from the minor accident and not because he forced his wife's car off the road. The police detective testified that Jackson did not mention anything about the minor incident. Jackson claims this was improper because it was commenting on his post-*Miranda* silence. This contention is without merit because Jackson waived his *Miranda* rights at the time of the initial police questioning. Jackson freely offered his version of the facts regarding how the incident happened and never mentioned the gas station accident. Moreover, the question was for the purpose of impeaching Jackson and was not intended as a comment on his silence. *See State v. Robinson*, 140 Wis. 2d 673, 682, 412 N.W.2d 535, 539 (Ct. App. 1987).

Although Jackson did ultimately invoke his right to remain silent after initial questioning, he cannot hide behind *Miranda* to lie in court. *Harris v. New York*, 401 U.S. 222, 224 (1971). Further, the police

detective's testimony was cumulative to unchallenged and proper testimony[3] which indicated Jackson failed to mention the minor accident in earlier, pre-*Miranda* discussions with the police. Therefore, allowing this questioning was not indicative of trial court bias.

Finally, Jackson alleges that the trial court's refusal to order a presentence report evinces its bias towards him. Again, we disagree. A presentence report is not required and the decision to order one is discretionary. *Weatherall v. State*, 73 Wis. 2d 22, 33, 242 N.W.2d 220, 225, *cert. denied*, 429 U.S. 923 (1976); *Byas v. State*, 55 Wis. 2d 125, 128-29, 197 N.W.2d 757, 759 (1972). (The trial court must decide and impose an appropriate sentence from all the information available to it and not just from a presentence report.) The relevant factors to be considered in sentencing include: protection of the public, gravity of the offense and the rehabilitative needs of the defendant. *McCleary v. State*, 49 Wis. 2d 263, 276, 182 N.W.2d 512, 519 (1971). Other factors considered include the "defendant's criminal record; history of undesirable behavior patterns; personality, character, and social traits; results of a presentence investigation; degree of culpability; demeanor at trial; age, educational background and employment record; and remorse, repentance and coop-

---

[3] Jackson was also questioned about the fatal crash earlier that morning at 2 a.m. During this earlier questioning, Jackson was not in custody and therefore *Miranda* warnings were not given. He answered various questions, including questions about events which led up to the fatal crash. He told the police that at the time of crash, he was on his way to visit a friend. One of the police detectives who was involved in this questioning testified during the prosecution rebuttal that Jackson did not mention hitting Diane's car at the gas station.

erativeness." *State v. Curbello-Rodriguez,* 119 Wis. 2d 414, 433, 351 N.W.2d 758, 767 (Ct. App. 1984). The trial court had appropriate information available to it in this case. The trial court presided over the trial and had the opportunity to hear Jackson's testimony. The court was also aware of Jackson's criminal record and directed Jackson's counsel to provide it with any additional information necessary. From all of this information, the court properly assessed the relevant factors. We find that imposition of the maximum sentence without a presentence report, given the particular circumstances of this case and the nature of the crime, did not evince trial court bias.

*By the Court.*—Judgment affirmed.