REBECCA G. BRADLEY, J.
¶ 89. (concurring). I join the majority in affirming the court of appeals. I write separately, however, to address two important issues. First, although the majority reaffirms Cook v. *600 Cook, 208 Wis. 2d 166, 560 N.W.2d 246 (1997), and holds the court of appeals should certify an appeal when its disposition depends upon conflicting published court of appeals cases, the majority does not explicitly overrule State v. Swiams, 2004 WI App 217, 277 Wis. 2d 400, 690 N.W.2d 452, or State v. Bolden, 2003 WI App 155, 265 Wis. 2d 853, 667 N.W.2d 364. This, in my opinion, may leave the courts and the bar with uncertainty. I write to clarify that the principle implied in Bolden and repeated as dicta in Swiams that "if two court of appeals decisions conflict, the first governs" directly conflicts with Cook and therefore is implicitly overruled by the majority opinion. Second, I would clarify or withdraw problematic language from Grube v. Daun, 173 Wis. 2d 30, 496 N.W.2d 106 (Ct. App. 1992), rather than overrule it.
I. COOK V. COOK
f 90. In Bolden, the court of appeals' disposition depended upon two cases, State v. Jackson, 187 Wis. 2d 431, 523 N.W.2d 126 (Ct. App. 1994), and State v. Kuehl, 199 Wis. 2d 143, 545 N.W.2d 840 (Ct. App. 1995). The district II court of appeals decided Kuehl one year after district I decided Jackson. District II in Kuehl disagreed with district I's Jackson opinion, held that Jackson had been wrongly decided, and overruled it. See Kuehl, 199 Wis. 2d at 149. Although district II acknowledged it was obligated to abide by Jackson, district II explained that it believed Jackson conflicted with an earlier case, State v. Haseltine, 120 Wis. 2d 92, 352 N.W.2d 673 (Ct. App. 1984); therefore, district II concluded it was "free to follow the decision which we conclude is correct." Kuehl, 199 Wis. 2d at 149. Kuehl, which was decided before this court's pronouncement in Cook, was not appealed. Cook made clear that when *601 the court of appeals believes a previously published court of appeals case was wrongly decided, the court of appeals does not have the power to overrule itself. Cook, 208 Wis. 2d at 189-90. If the court of appeals finds itself in a situation where it wants to overrule an earlier decision, it has two choices: (1) certify the appeal to this court; or (2) "decide the appeal, adhering to a prior case but stating its belief that the prior case was wrongly decided." Cook, 208 Wis. 2d at 190. Cook did not, however, explicitly overrule Kuehl. As a result, parties continued to ask the court of appeals to overrule its published decisions, relying on KuehVs mistaken proposition. See Bolden, 265 Wis. 2d 853, ¶ 9.
¶ 91. Bolden, relying on Cook's statement prohibiting the court of appeals from overruling itself, reasoned that district II in Kuehl did not have the power to overrule district I's Jackson decision, and therefore relied on Jackson to affirm Bolden's conviction. Bolden, 265 Wis. 2d 853, ¶ 11. One year after Bolden, this court specifically addressed Kuehl and Jackson and reiterated the Cook rule that the court of appeals cannot overrule an earlier court of appeals decision. State v. Johnson, 2004 WI 94, ¶¶ 16-18, 273 Wis. 2d 626, 681 N.W.2d 901. Johnson overruled the language in Kuehl suggesting that disregarding a published court of appeals opinion is a valid option. Id., ¶ 17. Johnson reiterated that the court of appeals does not have the option of disregarding its published opinions. Despite Johnson's clear holding that the court of appeals cannot overrule itself, the court of appeals has, on a few occasions since Johnson, cited Bolden for the very proposition that was overruled in Johnson. The majority cites the court of appeals decisions that have done so, see majority op., ¶ 78, most notably Swiams.
*602 ¶ 92. Swiams ignored this court's holding in Johnson and cited Bolden for the erroneous proposition that the court of appeals may decline to follow a case that conflicts with an earlier case. See Swiams, 277 Wis. 2d 400, ¶ 23.[1] This court has repeatedly held that the court of appeals cannot overrule itself and therefore does not have the option to disregard one published decision so it can follow an earlier published decision. The majority says so again here, thereby implicitly overruling the language in Swiams and any decision supporting the proposition that "if two court of appeals decisions conflict, the first governs." I would expressly overrule such language.
¶ 93. The majority emphasizes that Cook and Johnson hold that the court of appeals does not have the power to overrule itself. The majority explains why it is so important that the court of appeals does not disregard one opinion and choose to follow an earlier opinion: (1) the court of appeals does not have the authority to do so; (2) choosing to follow an earlier case is overruling the more recent case; and (3) courts' interpretations of whether cases conflict can widely differ. Majority op., ¶ 79. Also, as noted in Cook, allowing the court of appeals to follow the first-decided case because it believes a later case conflicts would interfere with "predictability, certainty and finality relied upon by litigants" and encourage forum shopping in the four districts of the court of appeals. Cook, 208 Wis. 2d at 189. For these important reasons, the court of appeals must abide by Cook, Johnson, and now *603 this opinion, and stop disregarding one court of appeals decision because it believes an earlier decision should be followed.
¶ 94. In this case, both the circuit court and the court of appeals decided that Grube, 173 Wis. 2d 30, and two other cases[2] were not good law, disregarded those opinions, and applied the law from an earlier court of appeals opinion, Professional Office Buildings, Inc. v. Royal Indemnity Co., 145 Wis. 2d 573, 427 N.W.2d 427 (Ct. App. 1988). That should not have happened. Such action creates dangerous precedent for our court system. The circuit court should have followed the case law and the court of appeals should have certified Marks to this court to resolve any perceived conflict. See Cook, 208 Wis. 2d at 190; Johnson, 273 Wis. 2d 626, ¶¶ 16-18.
II. GRUBE
¶ 95. The majority overrules Grube, 173 Wis. 2d 30, Kenefick v. Hitchcock, 187 Wis. 2d 218, 522 N.W.2d 261 (Ct. App. 1994), and Radke v. Fireman's Fund Ins. Co., 217 Wis. 2d 39, 577 N.W.2d 218, 522 N.W.2d 366 (Ct. App. 1998) as "inconsistent with a long line of Wisconsin case law," and "unsound in principle." Majority op., ¶¶ 73, 75. The majority explicitly overrules any statements in these cases "that exclusions may not be considered in an analysis of whether an insurer has breached its duty to defend its insured" when the insurer unilaterally denies a defense without seeking a coverage determination in court. Id., ¶ 75.
*604 ¶ 96. I agree with the majority that Wisconsin duty-to-defend law requires comparing the complaint to the entire insurance policy, including exclusions. See Estate of Sustache v. Am. Family Mut. Ins. Co., 2008 WI 87, ¶ 20, ¶¶ 22-23, 311 Wis. 2d 548, 751 N.W.2d 845. Instead of overruling Grube and its line of cases, however, I would harmonize it with Professional Office Buildings.
¶ 97. In determining whether a duty to defend exists under a policy, the court compares the four corners of the complaint to the entire policy, including exclusions. Estate of Sustache, 311 Wis. 2d 548, ¶ ¶ 22-23. Typically, however, as the majority notes at ¶ 41, an examination of policy exclusions at the duty-to-defend stage will not operate to relieve an insurer of its duty to defend. This is because whether an exclusion applies to preclude coverage often depends on extrinsic evidence, which is not considered in the duty-to-defend analysis. See Fireman's Fund Ins. Co. of Wis. v. Bradley Corp., 2003 WI 33, ¶ 19, 261 Wis. 2d 4, 660 N.W.2d 666.
¶ 98. This basic principle, together with a lack of consistency of language used in insurance cases, is what has created confusion in the Grube line of cases. Grube, Kenefick, and Radke are often cited to argue that a court, which is asked to rule on a duty-to-defend question, cannot consider exclusions if an insurer unilaterally denied a defense to its insured. Of course, this is not the law. A duty-to-defend analysis always requires a comparison of the complaint to the entire policy, regardless of whether the insurer unilaterally denied a defense or chose one of the preferred methods to determine if a duty to defend was triggered by a complaint. It is only when a court determines an insurer breached its duty to defend, after the court *605 compares the complaint to the entire policy, that an insurer may no longer rely on exclusions to avoid its indemnity obligations under the policy. See Professional Office Bldgs., Inc., 145 Wis. 2d at 585-86.
¶ 99. In Grube, the circuit court determined the insurer breached its duty to defend after the court considered the entire policy, including exclusions. Grube, 173 Wis. 2d at 49, Unlike this case, the policy exclusions in Grube, when compared to the language in the complaint, did not preclude coverage. It was the insurer's breach of its duty to defend, and not the decision to unilaterally decline to defend its insured, which later precluded the insurer in Grube from invoking coverage defenses. The concluding paragraph in Grube makes this clear: "[the insurer], by not contesting coverage in court and by breaching its duty to defend [the insured], is estopped from raising any challenges to coverage and must indemnify [the insured] up to the limits of his policy." What the majority interprets as a departure from Wisconsin insurance law was more likely the court of appeals abbreviating its analysis in a case where it agreed with the circuit court that an insurer breached its duty to defend.[3] When a court determines the insurer breached the duty to defend, the insurer cannot use its exclusions to avoid paying out on the policy. Professional Office Bldgs., Inc., 145 Wis. 2d at 585-86. It is for this reason *606 that we repeatedly caution insurers to opt for one of the preferred methods of determining coverage, see majority, ¶ 41 & n.21, rather than unilaterally refusing to defend.
¶ 100. This case, and a companion insurance case heard the same day, Water Well Solutions Service Group Inc. v. Consolidated Insurance Co., 369 Wis. 2d 607, 881 N.W.2d 285, presented the less typical scenario where exclusions demonstrated the insurer did not have a duty to defend. In this case, we hold that a comparison of the complaint to the business enterprise exclusion confirms the insurer did not have a duty to defend. Majority op., ¶¶ 47-55. In Water Well we hold that a comparison of the complaint to the "your product" exclusion confirms the insurer did not have a duty to defend. Water Well Sols. Serv. Grp., 369 Wis. 2d 607, ¶ 3.
¶ 101. For these reasons, I respectfully concur.

 This language in State v. Swiams, 2004 WI App 217, 277 Wis. 2d 400, 690 N.W.2d 452, was dicta as it appears in the last paragraph of that opinion, almost as an aside, and was not necessary for disposition of the appeal. Id., ¶ 23.

 The other two cases were Kenefick v. Hitchcock, 187 Wis. 2d 218, 522 N.W.2d 261 (Ct. App. 1994), and Radke v. Fireman's Fund Insurance Co., 217 Wis. 2d 39, 577 N.W.2d 366 (Ct. App. 1998).

 The language in Grube v. Daun, 173 Wis. 2d 30, 74, 496 N.W.2d 106 (Ct. App. 1992), triggering the confusion about whether it is the breach of the duty to defend or the unilateral decision of the insurer not to defend is as follows: "We hold that under Professional Office Bldgs., [the insurer] is estopped from raising any challenges to coverage; it must both defend and indemnify [the insured] because [the insurer] denied coverage outright."